**HINDU TEMPLE SOCIETY OF NORTH AMERICA,**
et al., Plaintiffs,

v.

**SUPREME COURT OF THE STATE OF NEW YORK,**
et al., Defendants.

No. 04 CV 3342 RJD.

United States District Court,
E.D. New York.

Sept. 15, 2004.

Robert L. Greene, Esq., Eric C. Rassbach, Esq., Roman P. Storzer, Esq., The Becket Fund for Religious Liberty, Washington, DC, for Plaintiffs.

Amy Marie Held, Esq., Office of the New York State Attorney General, New York City, for Defendants Supreme Court of the State of New York and Justice Joseph G. Golia.

Anthony J. Piacentini, Port Washington, Pro se.

Krishnan Shanker Chittur, Esq., Chittur & Associates, P.C., New York City, for Defendants Sambasiva Rao Venigalla, Kattinger V. Rao, Anand Mohan, Venkaiah Dama, Nehru E. Cherukupalli, and Vasantrai M. Gandhi.

Defendant Krishnamurthy Aiyer, Brooklyn, NY, Pro se.

## MEMORANDUM & ORDER

DEARIE, District Judge.

After more than three years litigating essentially the same claims involving essentially the same parties in the New York state courts, respondents in the state action commenced this federal suit. At stake in both the state and federal litiga-

tions is control of the Hindu Temple Society of North America (the "Society") and its temple, located in Queens County, New York. Plaintiffs seek to enjoin the New York Supreme Court and various individual defendants from establishing a voting membership in the Temple that will elect a new Board of Trustees. Plaintiffs have raised First Amendment claims at various points during the ongoing state proceedings. Dissatisfied with the outcome in state court, plaintiffs seek to bring such claims before this Court. Although the Court appreciates the important First Amendment concerns raised by plaintiffs, the Court must abstain from assuming jurisdiction over the case and defer to the state courts to resolve these issues.

## BACKGROUND

Because the background of this case is complicated, the Court recites here only those facts which are relevant to this motion and are largely undisputed. The Society is a non-profit religious corporation formed in 1970 pursuant to Article 9 of New York's Religious Corporations Law ("RCL"). Pls' Ex. 6. In the same year, the founders filed an application for tax exemption with the IRS which included a set of bylaws. Pls' Ex. 7 ("1970 Bylaws"). The 1970 Bylaws provided, among other things, for the Temple to be a membership organization with membership open to people regardless of religion. Members who had paid their annual dues would be eligible to vote for the Board of Trustees, the Managing Committee, and changes to the bylaws. It is undisputed that the 1970 Bylaws were never followed by the Society. It also appears that many who are close to the Temple were unaware of their existence. Plaintiffs [1] contend that the 1970 Bylaws were only a "draft" which the Temple never adopted. Instead, they claim a different set of bylaws was approved a few years later and amended a number of times since. Under these later bylaws, the Society has operated with a self-perpetuating Board and without elections by the membership. Although there appear to be life and annual "members" of the Temple, plaintiffs maintain that the Society never intended that voting rights accompany such membership.

In June 2001, the state petitioners initiated a special proceeding in the New York State Supreme Court pursuant to Not–for–Profit Corporations Law § 706 and § 714. The petitioners sought, inter alia, to remove the current Board of Trustees, invalidate the current bylaws, compel production of the current membership list to permit an election, appoint a receiver, and enjoin the Board from entering contracts or borrowing money. After analyzing the bylaws, recent amendments, and state law, defendant Justice Golia observed that the Society had adopted bylaws in 1970 which had been amended a number of times since. Pls' Ex. 11. He found that the Society was required to have at least one class of voting members. He ordered the number of Board Trustees be reduced to seven, in compliance with state law, and directed that the bylaws be amended to comply with his rulings. He denied the request to remove the Board and appoint a receiver.

State petitioners, but not respondents, appealed various aspects of the ruling.

---

**1.** For sake of clarity, the Court will use the phrase "plaintiffs" to refer to the plaintiffs to this federal action, including Trustee plaintiffs and non-Trustee plaintiffs. The non-Trustee plaintiffs are not party to the state proceedings. Similarly, the Court will use the term "defendants" to refer to defendants in the federal action. The Court will use the term "petitioners" to refer to those parties who initiated the special proceedings in state court. The term "respondents" refers to the parties defending that state action, most of whom are plaintiffs in this case.

The Appellate Division ruled that the 1970 Bylaws had in fact been adopted, that the Society had never followed those Bylaws, and that therefore the current Board had been illegally constituted.[2] Pls' Ex. 13 (the "August Order"). The Appellate Division remanded the matter to the Supreme Court "for the appointment of a referee to direct and oversee a reorganizational meeting of the Society for the purpose of electing a new Board." *Id.* The state respondents then sought leave to appeal the Appellate Division Order, in part on First Amendment grounds. Pls' Rely Ex. 1. The Appellate Division denied the motion by order dated November 17, 2003. Pls' Reply Ex. 2.

Pursuant to the Appellate Division's August Order, Justice Golia appointed defendant Anthony Piacentini as referee. Justice Golia also ordered that the current Board not enter any long-term agreements without consent of the referee and that the Board turn over various records to the state petitioners. Pls' Ex. 15.

In January 2004, Referee Piacentini issued an interim report. Pls' Ex. 16. He reported the absence of membership records and noted that the parties could not agree on a procedure for establishing a voting membership. He concluded that he would have to start from the "premise that there are no voting members of the Society at this time." *Id.* at 2. He announced a set of qualifications for membership, derived from the 1970 Bylaws. He also established a Managing Committee consisting of three members of the current Board and three challengers, with Piacentini casting a vote to break ties as necessary. Piacentini proposed mailing a letter and membership application to all those who appear on the Society's mailing list.

The state respondents filed a motion asking Justice Golia to reject Piacentini's interim report and stay the referee's proposed course of action, arguing that these actions would violate the First Amendment. Justice Golia denied the stay by order dated May 18, 2004, and denied the motion by order dated June 10, 2004. Pls' Exs. 20 & 21. The respondents appealed Justice Golia's ruling and sought a stay pending the determination of the appeal. The Appellate Division denied the motion for interim relief on July 23, 2004. Pls' Ex. 26. It appears that the appeal is still pending.

On July 13, 2004, Justice Golia signed an order directing the state respondents to show cause why they should not be held in contempt for failing to comply with the court's orders. Based on representations made at oral arguments, it appears that a contempt hearing against the state respondents is planned for the near future.

On August 4, 2004, state respondents filed this federal action against defendants Justice Golia, Referee Piacentini, the Supreme Court of the State of New York,[3] and the petitioners from the state action. Plaintiffs in this action include respondents from the state action as well as a group of Temple devotees who are not Trustees or parties to the state action. Plaintiffs allege that defendants are violating their constitutional rights of free speech, free exercise of religion, equal protection, and procedural due process. Plaintiffs now

---

**2.** The Court notes plaintiffs' contention that the 1970 Bylaws, which provide for a membership that elects the Board of Trustees, conflict with RCL Article 9, which envisions a self-perpetuating Board. As discussed below, it is not for this Court, at this stage, to review the merits of such a claim.

**3.** By letter to this Court, dated August 27, 2004, plaintiffs seek to withdraw their claims against the Supreme Court. Such a change is immaterial to the outcome of the present motion.

move for a preliminary injunction enjoining defendants from:

(1) attempting to impose a membership requirement on the Temple or otherwise send any mailing to those on the mailing list of the Temple;

(2) citing the plaintiffs for contempt;

(3) imposing any other penalty on plaintiffs for the exercise of their constitutionally protected rights;

(4) conspiring with one another to deprive plaintiffs of their civil rights;

(5) continuing in force and effect any orders interfering with construction of Temple facilities or limiting in any way the plaintiffs' ability to communicate with its devotees and other persons interested in the Temple;

(6) convening secret hearings with respect to the matters arising out of the state court action;

(7) engaging in ex parte communications with the parties to the state court action;

(8) forbidding plaintiffs from bringing counsel to proceedings related to the state court action; or

(9) forbidding plaintiffs from making a record of any proceedings related to the state court action.

## DISCUSSION

■ Plaintiffs argue that they are entitled to injunctive relief because they can demonstrate (1) irreparable harm and (2) a likelihood of success on the merits, or that serious questions on the merits are fair ground for litigation and the balance of hardships tips in their favor. *Mony Group, Inc. v. Highfields Capital Management, L.P.*, 368 F.3d 138, 143 (2d Cir.2004) (internal quotations and citations omitted). Defendants argue that (1) the Court must abstain from hearing the case under the *Younger* doctrine and (2) the Court lacks jurisdiction under the Rooker–Feldman doctrine. The Court appreciates the serious First Amendment concerns raised by plaintiffs. However, assuming without deciding that the Court has subject matter jurisdiction over these claims, the Court finds that it must abstain pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ Abstention from the exercise of jurisdiction is an exception, rather than the rule. Indeed, "*Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir.2003), *cert denied* — U.S. ——, 124 S.Ct. 2812, 159 L.Ed.2d 247 (2004) (internal citations omitted). The balance between federalism and comity, as reflected in the *Younger* doctrine, generally requires federal courts to abstain from "taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond D Construction Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir.2002). "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 74.

Stressing the important First Amendment issues raised in this case, plaintiffs contend that the predicates for *Younger* abstention are not present. Specifically, plaintiffs dispute that the state proceeding implicates an important state interest or that they have an adequate opportunity in the state proceeding for review of their First Amendment claims. They also emphasize that six of the federal plaintiffs are not parties to the state action and argue that they should not therefore be barred from proceeding in this Court.

## A. Important State Interest

The *Younger* doctrine originated in the context of federal suits filed during the pendency of related state criminal proceedings. However, in *Pennzoil, Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Supreme Court noted that the doctrine of abstention also applies to "certain civil proceedings ... if the State's interests in the proceeding are so important that the exercise of the federal judicial power would disregard the comity between the States and the National Government."

Defendants point principally to the state's interest in protecting religious corporations, citing *Greek Orthodox Archdiocese of N. & S. Am. v. Abrams*, 162 Misc.2d 850, 618 N.Y.S.2d 504 (1994). Plaintiffs argue that any such interest is insufficient to justify abstention. However, at this stage in the state proceedings, after years of litigation in the state courts, the state's interest has broadened to include a strong interest in enforcing its judicial orders and judgments.

As the Supreme Court has noted, a state has a significant interest in "administering certain aspects of [its] judicial system[ ]." *Pennzoil*, 481 U.S. at 12–13, 107 S.Ct. 1519. *See also Juidice v. Vail*, 430 U.S. 327, 334–35, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (holding that because state has important interest in civil contempt proceedings, federal court is required to abstain from suit against state judge challenging constitutionality of contempt statute and seeking injunctive relief). In that case, Pennzoil had won a judgement in excess of $10 billion dollars after a state jury trial. A Texas law provided that Pennzoil could execute a lien on Texaco's assets unless Texaco posted a bond in the amount of the judgement, interest, and costs. It appeared that Pennzoil could take these actions prior to the completion of the appeals process. Texaco filed suit in federal court alleging that the Texas law violated various federal constitutional and statutory rights and seeking an injunction against further enforcement actions. The lower federal courts found *Younger* abstention did not apply because the state proceeding did not implicate an important state interest. The Supreme Court reversed. It emphasized that abstention was proper because of "the State's interest in protecting the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Id.* at 14, n. 12, 107 S.Ct. 1519 (internal quotations and citations omitted).

The *Pennzoil* case involved not simply a challenge to a state law, but a challenge "to the processes by which the State compels compliance with the judgments of its courts." *Pennzoil*, 481 U.S. at 13–14, 107 S.Ct. 1519. *See also Juidice*, 430 U.S. at 335, 97 S.Ct. 1211 ("A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest."). Such is the case here, as well. The plaintiffs' federal court challenge is directed against the state court's efforts to enforce its judgement that the 1970 By-laws bind the Society. Thus, the state's interest goes beyond simply enforcing the RCL; it goes to ensuring compliance with its orders. This distinguishes the present case from those cited by plaintiffs. *See, e.g., Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir.1997) (abstention not appropriate where litigation in state court against tobacco companies to recover money damages was in essence a "subrogation claim grounded in tort" and "not a generic proceeding of great importance to the state"); *Kendall–Jackson Winery v. Branson*, 82 F.Supp.2d 844 (N.D.Ill.2000) (finding a state's interest in defending the constitutionality of its statutes, without

more, insufficient for purposes of *Younger* abstention).

Plaintiffs also contend that, because the state's intervention in the internal affairs of the Temple violates the First Amendment, the state can have no legitimate interest in proceeding with this unconstitutional activity. However, as discussed above, *Younger* requires this Court to abstain from deciding such questions while the state proceedings are ongoing. The spirit animating *Younger* is that state courts can be trusted to follow the mandates of the federal constitution. *See Spargo*, 351 F.3d at 75 ("Giving states 'the first opportunity ... to correct their own mistakes' when there is an ongoing state proceeding serves the vital purpose of 'reaffirming the competence of the state courts,' and acknowledging the dignity of states as co-equal sovereigns in our federal system.") (quoting *Diamond D Constr.*, 282 F.3d at 200). Indeed, a challenge to the state court's effectuation of its judgments is precisely what the plaintiffs should raise on appeal through the state court—not in a parallel, contemporaneous attack in federal court.

## B. Adequacy of Opportunity for Judicial Review in State Proceedings

"Abstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit." *Spargo*, 351 F.3d at 77 (quoting *Middlesex County Ethics Comm. v. Garden State Bar Association*, 457 U.S. 423, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)) (additional internal quotations and citations omitted). Plaintiffs dispute that the state forum is adequate or will offer timely review or relief.

*Spargo* is instructive on this issue. *Spargo* involved a state court judge facing disciplinary charges before the state commission on judicial conduct. While the charges were pending, the judge brought a federal suit arguing that the judicial conduct rules violated his constitutional right to free speech. The judge claimed abstention was inappropriate because (1) the nature of the disciplinary proceedings prevented him from effectively raising his constitutional challenge and (2) it was unclear whether there was mandatory review of the commission's rulings by the Court of Appeals. The Second Circuit concluded that the district court should have abstained from hearing the case. The court noted that in the interim, the Court of Appeals had ruled that its review of the commission's decisions was mandatory and therefore the judge would be able to present his constitutional claims in state court. However, the discussion of the issue suggests that mere difficulty or unconfirmed inability to raise a constitutional claim in the state forum does not allow a federal court to hear the case. The court stressed that a plaintiff arguing against abstention "must demonstrate that state law *bars* the effective consideration of [his] constitutional claims." *Spargo*, 351 F.3d at 78 (emphasis added). *See also Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir.2000) (To establish the inadequacy of the state forum, the plaintiff must "show[ ] that the State's laws, procedures, or practices would prevent his effective interposition of his federal contentions."). *Younger* only "presupposes that the plaintiff be able to interpose his federal defense ... in the state court; it does not require that all the procedures for the interposition of the federal defense be as advantageous in the state court as in the federal action." *Kirschner*, 225 F.3d at 235 (rejecting arguments that procedures in state administrative proceeding were inadequate for purposes of *Younger* because they were not public). Furthermore, the "relevant question under *Younger* is 'whether the state's procedural remedies

*could* provide the relief sought [not] ... whether the state *will* provide' the constitutional ruling which the plaintiff seeks." *Spargo,* 351 F.3d at 79 (quoting *Kirschner,* 225 F.3d at 234–35) (emphasis added in *Spargo* ).

Plaintiffs have not shown a bar. to raising their constitutional claims in the state proceedings. Indeed, the record indicates that respondents in the state action have consistently pressed their constitutional concerns at numerous points. *See* Pls' Ex. 18, 20, and 22; Pls' Reply Ex. 1; Def. Exs. 8 and 11. The real issue, it would seem, is not that plaintiffs' constitutional claims are barred from consideration, but that plaintiffs are to date dissatisfied with the state courts' treatment and resolution of their claims. This is insufficient to avoid *Younger* abstention.

Plaintiffs also contend that the posture of the state case is such that they will not receive timely relief on their constitutional claims. Plaintiffs maintain that the Appellate Division has no duty under state law to rule on the challenged actions before the damage plaintiffs seek to enjoin occurs. However, the Court finds that this claim essentially merges with the adequacy claim, given that plaintiffs have already raised, and lost, their constitutional claims. *See, e.g., Juidice,* 430 U.S. at 337, 97 S.Ct. 1211 (where it is "abundantly clear that [plaintiffs] had an *opportunity* to present their federal claims in the state proceedings ... no more is required to invoke *Younger* abstention") (emphasis in original). Essentially, plaintiffs claim that. because their constitutional claims have already been rejected, they will not achieve the desired outcome in a timely fashion. However, that is the case any time a party loses at the initial stages and must wait to press his claims on appeal.

## C. Application of *Younger* to Plaintiffs Not Party to the State Proceeding

Plaintiffs also stress that the six plaintiffs who are not parties to the state proceedings should not be barred under *Younger* from pursuing these claims in federal court. Plaintiffs are correct that *Younger* generally is not applied against those not party to the pending state proceedings. The Supreme Court has recognized that although plaintiffs should not "automatically be thrown into the same hopper for *Younger* purposes," there may be "some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). *See also Hicks v. Miranda,* 422 U.S. 332, 348–50, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (abstaining from federal suit brought by parties who were later subject to state criminal prosecution because their interests were "intertwined" with state criminal defendants, same lawyers represented both, federal action "sought to interfere with the pending state prosecution," and federal plaintiffs failed to show that they could not obtain relief or raise constitutional claims in state proceedings). "Courts have consistently recognized that while congruence of interests is not enough, by itself, to warrant abstention, where the plaintiffs' interests are so inextricably intertwined that direct interference with the state court proceeding is inevitable, *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state proceeding." *Spargo,* 351 F.3d .at 82 (internal quotations and citations omitted).

For instance, in *Spargo,* the district court concluded that *Younger* did not apply to the two federal plaintiffs, McNally and Kermani, who were not parties to the

state proceedings against Spargo. The Second Circuit reversed. It found that the "legal interests" of those plaintiffs were "sufficiently intertwined with those of Spargo to make abstention applicable to all of the plaintiffs' claims." *Spargo*, 351 F.3d at 81–82. Although McNally and Kermani were not directly regulated by the challenged judicial codes, their First Amendment rights to receive Spargo's speech were "entirely derivative" of Spargo's right to engage in that speech. Thus, because McNally's and Kermani's rights were inextricably linked to those of Spargo, the "legal analysis of the plaintiffs' claims are unavoidably intertwined and inseparable." *Id.* at 83. The court continued that "McNally's and Kermani's claims are largely the mirror-image of Spargo's First Amendment challenge, and it would be impossible for the District Court to analyze plaintiffs' claims independently without first analyzing Spargo's constitutional right to engage in the charged conduct, a matter which, under *Younger*, must be resolved in the pending state ... proceeding." *Id.* at 84, 91 S.Ct. 746.

Thus, in *Spargo*, although the *harms* suffered by the parties differed (inability to speak versus inability to receive speech), their legal claims and interests were inextricably intertwined, warranting the application of *Younger* to McNally and Kermani. Similarly in this case, the harms suffered by the different parties vary. The Trustee plaintiffs may be removed from office and face state interference in their religious exercise. The non-Trustee plaintiffs, on the other hand, will suffer only the latter. Furthermore, the interests of the parties diverge slightly. As noted at argument, some of the non-Trustee plaintiffs may primarily want an end to the litigation, whatever the resolution, so that the Temple can go forward with projects that are on hold during the pendency of the state action. Despite such differences, the legal claims and rights of

all the federal plaintiffs concern the validity of the 1970 Bylaws, the constitutionality of the RCL, and the actions of defendants Justice Golia and Piacentini to enforce the mandate of the Appellate Division and the requirements of the RCL. It would be impossible for this Court to address the claims of the non-Trustee plaintiffs without resolving issues at the heart of the current state proceeding. This is precisely what *Younger* mandates against. Although the non-Trustee plaintiffs' claims are not directly "derivative" of the Trustee plaintiff's rights, as in *Spargo*, the Court finds them to be so intertwined as to justify the application of *Younger* to their claims.

Plaintiffs seek to distinguish *Spargo* by arguing that it involved the *vicarious* vindication of Spargo's rights by third parties. Plaintiffs argue that the non-Trustee plaintiffs are protecting their *own* First Amendment rights, not those of the Trustees. However, the same is true in *Spargo*. There, the third-party plaintiffs sought to protect their *own* rights to *receive* speech. Although these rights derived from Spargo's right to speak, they were legally distinct. Thus, there was nothing "vicarious" about the third-party plaintiffs' claims.

Plaintiffs also rely on *Brown v. Damiani*, 154 F.Supp.2d 317 (D.Conn.2001) to argue that abstention is not appropriate with respect to the claims of the non-Trustee plaintiffs. There, the district court allowed Brown, a reporter, to proceed with a federal claim that a gag order issued against a party to a state court proceeding violated Brown's First Amendment rights. The court concluded that the "derivative" nature of the federal plaintiff's rights did not necessitate abstention. However, the outcome of *Spargo*, on similar facts, appears to directly contradict this treatment by the district court. To the extent that *Brown* survives *Spargo*, the

Court finds that the interests and rights of the plaintiffs in this case are inextricably intertwined to such a degree that *Brown* is readily distinguishable.

Plaintiffs also claim that abstention from the non-Trustee plaintiffs' claims is inappropriate because they could not have intervened in the special state proceeding. Plaintiffs concede that New York has liberal joinder rules. However, they maintain that the non-Trustee plaintiffs would have shared no common question of law or fact with the claims raised in the state proceeding. However, it strikes the Court that there are myriad common questions, including: whether the 1970 Bylaws had been duly adopted; whether the current Board had been legitimately constituted; whether enforcement of the 1970 Bylaws and the RCL by the state court raises First Amendment concerns. The non-Trustees' interest in defending the legitimacy of the current Board and continuing the current leadership structure appears to provide a basis for intervention in the state proceeding. Notably, in *Spargo,* the third-party plaintiffs also argued that their inability to intervene in the administrative proceedings against Spargo allowed them to proceed in federal court. The Second Circuit rejected that argument when it concluded that *Younger* precluded exercise of federal jurisdiction over all the federal plaintiffs' claims. Thus, without more, plaintiffs' conjecture that the third-party plaintiffs could not have intervened in the state proceeding is insufficient to side-step *Younger.*

*Spargo* provides a final argument in favor of abstention. The *Spargo* Court stressed that abstention was appropriate because Kermani and McNally sought "to directly interfere with the pending disciplinary proceeding against Spargo by requesting that the District Court permanently enjoin defendants from pursuing the disciplinary proceeding or otherwise

enforcing the challenged judicial conduct rules." *Spargo,* 351 F.3d at 85. Similarly, the non-Trustee plaintiffs, like the Trustee plaintiffs, seek to prevent defendants from imposing a membership requirement on the Temple, identifying anyone as a member, holding an election for the Board of Trustees, and removing the current Board, among other things. Clearly, the non-Trustee plaintiffs in this case are asking this Court to intervene directly in the pending state action. *Younger* precludes the exercise of federal jurisdiction over these matters.

■ The Court agrees that *Younger* should be applied sparingly and cautiously to federal plaintiffs not parties to an ongoing state action. *See Green v. City of Tucson,* 255 F.3d 1086 (9th Cir.2001) (discussing risk that application of *Younger* to third-party plaintiffs creates requirement that parties, regardless of relationship, have obligation to intervene in pending state actions), *overruled in part on other grounds by Gilbertson v. Albright,* 381 F.3d 965 (9th Cir.2004). However, the authorities make clear that given the facts of this long-standing controversy, the Court should abstain from hearing all parties' claims. The non-Trustee plaintiffs raise claims inextricably linked to the claims of the Trustee plaintiffs. They are represented by the same counsel and they ask this Court to intervene directly in the ongoing state proceedings. Indeed, the non-Trustee plaintiffs have standing to raise constitutional claims *because of* the state court rulings. The Court concludes that this is one of those limited circumstances where it must abstain on all claims, despite the presence of plaintiffs not parties to the state action. As much as the Trustee plaintiffs may want to change the forum for this long-standing dispute, they will not succeed by adding

non-Trustee plaintiffs who assert clearly interrelated claims.

## D. Exceptions to Younger

Finally, plaintiffs contend that they fall within the exceptions to *Younger* abstention. "A plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies," namely "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Diamond D Constr.*, 282 F.3d at 198 (quoting *Younger,* 401 U.S. at 54, 91 S.Ct. 746).

Plaintiffs contend abstention is unwarranted because the state petitioners initiated the state court litigation for purposes of harassment. However, the cases addressing the bad faith and harassment exceptions do not apply here. Whatever the motivation of the state petitioners, a real dispute exists about the governance of the Society. As the Second Circuit has noted, "a state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constructional rights are egregious—will not warrant the application of the bad faith exception." *Diamond D,* 282 F.3d at 198 (discussing proceedings initiated by the state). Plaintiffs' unfortunate allegations of bias against defendants Justice Golia and Piacentini, even if accepted, do not rise to the level of bad faith necessary to trigger this exception.

The Court is also unpersuaded that the "extraordinary circumstances" exception applies. The Supreme Court explained that this exception applies only if the state court is rendered "incapable of fairly and fully adjudicating the federal issues before it . . . . [S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Kugler v. Helfant,* 421 U.S. 117, 124–25, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). The Second Circuit defines the exception to require that "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer great and immediate harm if the federal court does not intervene." *Diamond D Constr.,* 282 F.3d at 201 (internal quotations and citations omitted). Based on the discussion above, plaintiffs have not demonstrated such circumstances here.

■ Finally, plaintiffs raise a handful of other alleged "exceptions" to *Younger,* none of which the Court is persuaded would apply. Plaintiffs contend that *Younger* abstention is not appropriate with respect to their facial challenge to the RCL, citing *City of Houston, Texas v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) and *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 385 (2d Cir.2000). Both of those cases concerned abstention under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), not *Younger,* and therefore provide little guidance in the present case. Plaintiffs also contend that abstention is inappropriate when federal constitutional issues are at the core of the suit, citing a Third Circuit case. However, the motivating spirit of *Younger* is the presumption that state courts are eminently able to recognize and resolve federal constitutional questions. Finally, plaintiffs contend that *Younger* abstention is inappropriate where the state court proceedings are between private parties. However, the Supreme Court in *Pennzoil* held abstention appropriate in a case involving private parties in both the state and federal proceedings because the state proceedings implicated important state interests.

## CONCLUSION

Based on the foregoing, the Court concludes that it must abstain. Contrary to plaintiffs' contention, the Court finds that there are no material factual disputes that warrant an evidentiary hearing. The record is clear. The state proceedings offer an adequate forum in which plaintiffs can press all of the claims raised here, including the constitutional challenges to the RCL and the objections to particular decisions made by defendants Justice Golia and Piacentini.[4]

The Court has assumed, without deciding, that the Rooker–Feldman doctrine does not rob the Court of subject matter jurisdiction over the claims raised. Clearly, many of the claims pressed by the Trustee plaintiffs have been directly ruled on by the state courts and are therefore barred under Rooker–Feldman. The Court need not, and does not, address the extent to which the claims of the non-Trustee plaintiffs might similarly be barred.

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is denied. At oral arguments, defendants moved to dismiss the complaint on the basis of the arguments raised in their papers. The motion to dismiss is granted with respect to the claims against defendants Justice Golia, Piacentini, and the Supreme Court of New York. However, the claims for monetary damages against the remaining defendants survive, and will be stayed pending proceedings. *See Kirschner*, 225 F.3d at 237–39.

SO ORDERED.

---

4. Defendant Piacentini submitted a letter after the Court held arguments on the present motion. Plaintiffs argue that his failure to appear in the case prior to that somehow affects the resolution of this motion. The Court disagrees.