Sansara RAM, Harnam Rattu, Paramjit Lal, and Madan Singh Badhan, individually and on behalf of Shri Guru Ravidas Sabha of New York, Inc., Plaintiffs,

v.

Nand LAL, Nirmal Singh Daroch, Iqbal Singh, and Bhola Klair, Defendants.

No. 12 CV 4336(CLP).

United States District Court, E.D. New York.

Nov. 21, 2012.

David John Sutton, David J. Sutton, P.C., Garden City, NY, for Plaintiffs.

Michael R. Curran, Michael R. Curran, Attorney at Law, Rego Park, NY, for Defendants.

## ORDER

CHERYL L. POLLAK, United States Magistrate Judge.

On August 29, 2012, plaintiffs Sansara Ram, Harnam Rattu, Paramjit Lal, and Madan Singh Badhan (the "Federal Plaintiffs")[1] commenced this action, individually and on behalf of Shri Guru Ravidas Sabha of New York, Inc. ("the Temple"), against defendants Nand Lal, Nirmal Singh Daroch, Iqbal Singh, and Bhola Klair (the "Federal Defendants"), pursuant to 42 U.S.C. § 1983, for alleged violations of the First Amendment of the United States Constitution, as well as the New York State Not–For–Profit Corporation Law (N.Y. NOT-FOR-PROFIT CORP. LAW (McKinney 2012)), and the New York Religious Corporations Law (N.Y. RELIG. CORP. LAW (McKinney 2012)). The Federal Plaintiffs, who are four members of the Temple, seek a preliminary injunction to enjoin the Federal "Defendants and any other person, party, or entity, from taking any steps or authorizing any actions that are contrary to the Bylaws" of the Temple. (Pls.' Mem. at 28).

## BACKGROUND

According to the Federal Plaintiffs, both the Federal Plaintiffs and the Federal Defendants in this case are Ravidasia[2] (id. at 10), and belong to the Temple, which is located at 61–01 Broadway, Woodside, New York 11377. (Defs.' Mem.[3] at 1). The Temple has as its revered spiritual figure Shri Guru Ravidas. (Pls.' Mem. at 7; see also Defs.' Mem. at 1; Baker Aff.[4] ¶ 2). While the Federal Plaintiffs explain that Ravidasia is a religion (Pls.' Mem. at 7), the Federal Defendants assert that Ravidasia "is not a religion, but is to be defined as being a subgroup who have evolved from the Book of Sikh, the Guru Granth Sahib, which has been in existence since 1604." (Defs.' Mem. at 5).

The Federal Plaintiffs allege that there are "only a handful of Ravidasia temples

---

1. The Court has defined the parties in this action as "Federal Plaintiffs" and "Federal Defendants," to avoid confusion and to distinguish them from the parties in the related state court proceeding. (See Nand Lal, et al. v. Shri Guru Ravias Sabha of New York Inc., Balbir Chand, et. al., Queens County, Index No. 11–16218 (the "State Case")). While there is some common identity between the Federal Plaintiffs and the defendants in the State Case, the four Federal Plaintiffs who sued in this action are *not* named parties in the State Case. (See Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction, filed on November 13, 2012) ("Pls.' Mem" at 24).

2. Throughout the Federal Plaintiffs' papers, they use only one "s" in the spelling of Ravi-dasia. However, it is unclear to the Court whether the correct spelling is "Ravidasia" or "Ravidassia" because there are inconsistencies in the Federal Plaintiffs' papers and the Federal Defendants use the spelling "Ravidassia." The Court takes no position on the correct spelling, and merely uses the spelling found in the Federal Plaintiffs' papers for the sake of consistency.

3. Citations to "Defs.' Mem." refer to Defendants' Memorandum of Law in Opposition to the Motion for a Preliminary Injunction, filed on November 16, 2012.

4. Citations to "Baker Aff." refer to the Affidavit of Cynthia R. Baker, Esq. in Opposition to Plaintiffs' Motion for an Injunction, filed on November 15, 2012.

around the world," and that the Temple at issue in this case is the only Ravidasia temple on the East Coast. (Pls.' Mem. at 8). The Federal Defendants concur, stating that, in addition to the Temple here in Queens, there are a total of six Ravidasia temples in the United States, with one in Texas and four others in California. (Daroch Aff.[5] ¶ 4). The Federal Plaintiffs claim that "the Temple is very precious and important to the Ravidasia community in the tri-state region (and beyond)." (Pls.' Mem. at 8).

The Federal Plaintiffs assert that pursuant to the Temple's purpose and according to its Bylaws, only Ravidasia can become members of the Temple. (*Id.* at 8–9). The Federal Plaintiffs contend that "[t]o become a member of the Temple, one has to fill out an Application for General Membership," which requires the pledge: "I belong to the Ravidassia Community, i.e. I am· a son/daughter of a Chammar/Addharmi." (*Id.* at 9, Ex. E).

According to the Federal Plaintiffs, there are two factions of Ravidasia within the Temple, a fact which the Federal Defendants do not dispute. (*Id.* at 10; *see generally* Defs.' Mem. at 4–6). The Federal Plaintiffs contend that of the 2,500 members of the Temple, persons taking a position similar to that taken by the Federal Plaintiffs comprise approximately 68% of the Temple membership, and persons affiliated with the Federal Defendants' faction represent the remaining 32%. (Pls.' Mem. at 6). The Federal Defendants reject this assertion, instead arguing that the Temple has between 4,000 and 5,000 worshipers and that the Federal Defendants have "70% backing at the present time." [6] (Defs.' Mem. at 1; Daroch Aff. ¶ 13).

The Federal Plaintiffs contend that the Federal Defendants' faction has been trying to oust the Federal Plaintiffs' faction from control of the Temple "[f]or years" and that to effectuate this end, the Federal Defendants' faction filed a lawsuit in state court in 2008 challenging the results of a 2006 election of the Temple's Management Committee.[7] (Pls.' Mem. at 11). The Federal Defendants reject the Federal Plaintiffs' contention regarding the 2006 election and instead claim that "[t]here never was any election before the June 14, 2009 General Election, as it was the first in the history of the Temple." (Defs.' Mem. at 4). The Federal Defendants contend that prior to 2009, the Temple Management Committee Members and Trustees were chosen by "elders or leaders of the Temple" even though, according to the Federal Defendants, this violated the Temple's Constitution and Bylaws.[8] (*Id.*)

The Federal Plaintiffs and the Federal Defendants do agree that an election to appoint the Temple's leadership was held

---

**5.** Citations to "Daroch Aff." refer to the Affidavit of Nirmal Singh Daroch in Opposition to Plaintiffs' Motion for an Injunction, filed on November 16, 2012.

**6.** The Court recognizes that there may be a difference between the contentions of the Federal Plaintiffs and the Federal Defendants on this point because the Federal Plaintiffs appear to be counting members, while the Federal Defendants seem to be counting worshipers. However, the Court does not have sufficient information about who is allowed to worship at the Temple (i.e. whether a worshiper must also be a member of the Temple) in order to express a view on the matter.

**7.** *See Nand Lal, et al. v. Shri Guru Ravias Sabha of New York, Inc., et al.*, Queens County, Index No. 08–4629.·

**8.** Defendants further contend: "In essence, since 2007 the Temple has been dominated by a self-perpetuating oligarchy, who have tried to undermine or recast the religious, social, financial, ethnic[,] and organizational aspects of the Temple without vote or participation of the electorate." (Defs.' Mem. at 5).

in 2009. (Pls.' Mem. at 12; Defs.' Mem. at 2). According to the Federal Plaintiffs, an independent organization was appointed to oversee the 2009 election, and the Federal Plaintiffs' faction won. (Pls.' Mem. at 12).

The Federal Plaintiffs claim that after the 2009 election, the Federal Defendants "began a campaign of recruiting non-Ravidasia outsiders to become general/voting members of the Temple in an attempt to create a majority of voters to win the next election." (*Id.* at 13).

According to the Federal Plaintiffs, many of the individuals who the Federal Defendants enrolled in the Temple are not Adharmi/Chammar, in contravention of the Temple's Bylaws. (*Id.*) The Federal Plaintiffs provide affidavits from six individuals who claim that they signed membership applications to become Temple members even though they admit that they are not members of the Chammar/Addharmi caste. (*Id.*) They claim that they did not understand and were not told [9] that only members of the Chammar/Addharmi caste were allowed to become members of the Temple.[10] (*Id.* at 13–14, Ex. I). Indeed, the affidavits state that they were "informed that *the Court* was allowing" people who were not members of the Chammar/ Addharmi caste to become members of the Temple. (*Id.*) In response, the Federal Defendants accuse the opposing faction of "coerc[ing] individuals to sign a few affidavits" and claim that "the rest were forged." (Daroch Aff. ¶ 19(a)).

In 2011, three of the four Federal Defendants in this case brought a lawsuit in state court ("the State Case") [11] against the Temple, the Members of the Management Committee and the Board of Trustees elected on June 14, 2009, and their appointed successors.[12] (Pls.' Mem. at 12–13). The Federal Defendants brought the State Case because they claimed that the 2009 Membership Committee "continued to administer and control the Temple after their two-year elective terms expired on June 14, 2011, in violation of the Temple Constitution and Bylaws." (Daroch Aff. ¶ 3; *see also* Defs.' Mem. at 2; Baker Aff. ¶ 3). According to the Federal Plaintiffs, the Federal Defendants sought, among other things, to remove the 2009 Management Committee and hold a new election. (Pls.' Mem. at 13).

On July 13, 2011, the Honorable Duane A. Hart, who presides over the State Case, granted the request of the plaintiffs in that case, and disbanded the 2009 Management Committee. He also appointed a Receiver, Cynthia R. Baker, to control the "assets

---

**9.** The Court notes that despite the affiants' claimed lack of knowledge, the Pledge that they each signed states: "I belong to the Ravadassi Community i.e. I am a son/daughter of a Chammar/Addharmi." (*Id.*)

**10.** The Federal Plaintiffs also provide a transcript from a proceeding before the Honorable Duane A. Hart, who presides over the State Case (*see infra*, n. 13), where, according to the Federal Plaintiffs' interpretation, the Federal Defendants' attorney, Michael Curran, admitted that the Federal Defendants' faction was recruiting individuals who did not qualify under the Bylaws of the Temple to become members. (Pls.' Mem. at 14, Ex. Q).

**11.** *See Nand Lal, et al. v. Shri Guru Ravias Sabha of New York Inc., Balbir Chand, et. al.,* Queens County, Index No. 11–16218.

**12.** Although the Federal Defendants contend that the Federal Plaintiffs in the case before this Court are aligned with the defendants in the State Case and that they have the same interests (Defs.' Mem. at 2; Baker Aff. ¶ 4), none of the four Federal Plaintiffs are actually named as parties to the State Case. (Pls.' Mem. at 24). Moreover, the Federal Plaintiffs appear to be represented by different counsel than the defendants in the State Case, and the Federal Plaintiffs note that they have explicitly raised First Amendment claims in this action that were not pleaded in the State Case. (*Id.*)

and operation" of the Temple until a new Management Committee could be elected. (Pls.' Mem. at 13, Ex. P; Baker Aff. ¶ 2). The Receiver, who has been overseeing the membership drive and determining the parameters and procedures for the election, scheduled an election to select a new Management Committee for the Temple.[13] The election is currently scheduled to occur on November 25, 2012 at 8:00 a.m. at the Temple. (Defs.' Mem. at 1).[14] Three of the named Federal Defendants are running for leadership positions in the Temple.[15] The Federal Plaintiffs assert that although the Federal Defendants are Ravidasia, the Federal Defendants "have aligned themselves with non-Ravidasia outsiders (namely Sikhs), and these non-Ravidasia outsiders are funding and backing defendants' faction in an attempt to take over control of the Temple." (Pls.' Mem. at 10). Although the Federal Plaintiffs take the position that true members of Ravidasia are not Sikhs (see Pls.' Mem. at 10), the Federal Defendants reject that characterization. (Defs.' Mem. at 5).

The Federal Plaintiffs contend that both factions have engaged in membership drives to increase their chances of winning the election. (Pls.' Mem. at 15). It is the Federal Plaintiffs' belief that the State Court and the Receiver have acted in direct contravention of the Bylaws of the Temple such that "at least 319 non-Ravidasia [are] being allowed to vote" in the upcoming November 25, 2012 election, which will result in "a Management Committee govern[ing] the Temple who have views contrary to the majority of the members" and "defeat the entire purpose of the Temple's creation." (Id. at 27). The Federal Defendants respond that the present litigation is a "last-ditch attempt" to prevent the election from going forward. (Defs.' Mem. at 6; see also Daroch Aff. ¶ 19(c)).

## PROCEDURAL HISTORY

The Federal Plaintiffs filed their Complaint in this action on August 29, 2012 against Federal Defendants Lal, Daroch, Singh and Klair.[16] (Pls.' Mem. at 18, Ex. B). The Federal Plaintiffs did not name the State Court or the appointed Receiver, Cynthia R. Baker, as parties to this action. (See Baker Aff. ¶ 5). To date, the Federal Defendants have not filed an Answer, but

---

13. The precise date on which the election was scheduled is unclear based on the papers provided to the Court. However, it is clear that the Federal Plaintiffs have known about the election at least since October 15, 2012, when the Receiver published a notice of the election's current date and location. (See Pls.' Mem., Ex. L).

14. By letter dated November 19, 2012, the Federal Defendants' attorney notified the Court that the defendants in the State Case have sought an injunction in the Appellate Division, Second Department, to stay the election. Since the Federal Plaintiffs have objected to the Court's consideration of this letter as an improper sur-reply, the Court only notes the representation that an injunction is being sought in state court and has not otherwise considered the substance of the letter in analyzing the issues herein.

15. Nirmal Singh Daroch is a candidate for President; Nand Lal is a candidate for Chairman; and Bhola Klair is a candidate for Cashier. (Daroch Aff. ¶ 9).

16. The Court notes that it appears the State Court formerly scheduled the impending election for April 22, 2012. (See Pls.' Mem., Ex. Q at 8). Although the election apparently was put over until November 25, 2012, the Court notes that the Federal Plaintiffs did not file their Complaint with this Court until months after the preparation for the election was already underway (see generally Pls.' Mem., Ex. Q) and did not file their motion for preliminary injunction until less than two weeks before the date of the election, thus raising questions about the diligence of the Federal Plaintiffs in this matter.

during a conference with this Court on November 8, 2012, the Federal Defendants indicated their intent to file a motion to dismiss the Complaint in lieu of an Answer. On November 13, 2012, the parties consented to have this case reassigned to the undersigned for all purposes.

In the Complaint, the Federal Plaintiffs requested the following injunctive relief: (1) [P]reliminarily and permanently enjoining the defendants from admitting or seeking to admit as general/voting members any person who is not Ravidasia or Adharmi/Chammar; (2) reinstating the Management Committee and the Trustees who were elected in June 2009; (3) entitling the reinstated Management Committee to review all membership rolls and applications to determine who is qualified to be a general/voting member of the Temple, to be completed within 90 days; and (4) directing that an election for the Management Committee and Trustees be held within 30 days thereafter.

(Compl. ¶ 104).

On November 13, 2012, the Federal Plaintiffs filed a motion for preliminary injunction with this Court, but simply requested "that this Court issue a prelimi-

nary injunction, enjoining the [Federal] Defendants and any other person, party, or entity, from taking steps or authorizing any actions that are contrary to the Temple Bylaws, until the time of a final judgment of the claims in this case."[17] (*Id.* at 17).

The Federal Defendants claim that the motion for a preliminary injunction should be denied because there is no likelihood of success on the merits and because the Federal Plaintiffs will suffer no irreparable harm should the election go forward. (Defs.' Mem. at 6–7). The Federal Defendants further contend that the action should be dismissed under Rule 19 of the Federal Rules of Civil Procedure for failure to join a necessary party (*id.* at 7), and they object to the allegedly overly broad nature of the injunctive relief requested. (*Id.* at 1).

### DISCUSSION

The Federal Plaintiffs in this case contend that the State Court and its appointed Receiver, Cynthia R. Baker, have violated their First Amendment rights by making voter-eligibility decisions that require religious determinations.[18] (Pls.' Mem. at 18–19). The Federal Defendants

---

**17.** In the Federal Plaintiffs' Reply Memorandum, filed November 16, 2012 ("Pls.' Reply"), the Federal Plaintiffs state that they request the following injunctive relief: "that the next election for the Temple Management Committee take place in accordance with the Temple Bylaws." However, a party may not seek different relief in their reply papers than that which they initially requested in their motion. Therefore, the Court proceeds with the understanding that the requested relief is that which was articulated in the Federal Plaintiffs' initial motion for a preliminary injunction.

**18.** The Federal Plaintiffs also seek relief under New York State Not–For–Profit Corporation Law and the New York State Religious Corporations Law. (*See* Pls.' Mem. at 20–22).

The Federal Plaintiffs contend that the New York State Not–For–Profit Corporation Law equips courts with "the power to make sure that religious corporations are complying with their own bylaws," and that the New York State Religious Corporations Law "grants religious corporations the sole authority to determine who is a member of their organization" and "states that elections of religious corporation offices are not proper if they were not conducted in accordance with the bylaws." (*Id.*) These appear to be essentially the same claims that are being litigated in the State Case. Moreover, in the absence of a cognizable federal claim, these state law claims would be dismissed for lack of federal jurisdiction and would be more properly brought in state court.

respond that the upcoming election should be allowed to proceed because the State Court and the Receiver have not violated the First Amendment, and that the election is necessary pursuant to and in accordance with the Temple's Constitution and Bylaws. (Defs.' Mem. at 6). To support their claims, the Federal Defendants submit an affidavit from the Receiver, Cynthia R. Baker, who denies having made religious determinations in overseeing the election preparation. (*See* Baker Aff. ¶¶ 7–11).

The Court's jurisdiction in this case arises from the Federal Plaintiffs' First Amendment claims, brought pursuant to 42 U.S.C. § 1983 (Compl. ¶ 90), and in accordance with the Court's federal question jurisdiction, 28 U.S.C. § 1331. (*Id.* ¶ 10). Whether the Federal Plaintiffs may be granted injunctive relief will, in part, depend upon whether the Federal Plaintiffs are likely to succeed in making out a meritorious claim under Section 1983 based on the alleged First Amendment violations.

However, in addition to determining whether the Federal Plaintiffs have met their burden for a preliminary injunction, the Court must address two other issues in deciding whether the requested relief may be afforded: (1) whether the Court should abstain pursuant to principles of comity even if the Federal Plaintiffs were able to meet their burden for a preliminary injunction, and (2) whether the Federal Plaintiffs have satisfied the standards set forth in the applicable Rules of Civil Procedure—particularly Rule 65, pertaining to injunctions, and Rule 19, regarding joinder of necessary parties—which are prerequisites for the Court to provide relief.

## I. *Preliminary Injunction*

■ In the Second Circuit, it is well-settled that in order to obtain a preliminary injunction:

[A] party must demonstrate (1) that it will suffer irreparable harm if the preliminary injunction is not issued, and (2) that it is likely to succeed on the merits of its claims or, in the alternative, has demonstrated sufficiently serious questions regarding the merits of the claims and the balance of hardships tips decidedly in its favor.

*L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.,* 79 F.3d 258, 261–62 (2d Cir.1996); *accord Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (*per curiam*).

■ It is equally well-established that a preliminary injunction is "an extraordinary remedy" that "should issue not upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent irreparable injury." *USA Network v. Jones Intercable, Inc.,* 704 F.Supp. 488, 491 (S.D.N.Y.1989). The mere possibility of irreparable harm is insufficient. *See Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 34 (2d Cir.1991). The claimant must show that the alleged injury is likely and imminent, not remote or speculative, and must also show that the injury cannot be fully remedied by monetary damages. *See Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990); *see also Borey v. National Union Fire Ins. Co.,* 934 F.2d at 34 (holding that "when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted").

■ "[A]s a general matter, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights." *Donohue v. Mangano,* 886 F.Supp.2d 126, 150 (E.D.N.Y.2012) (citing

*Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). The Second Circuit has stated that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984) (citing 11 C. Wright & A. Miller, Federal Practice & Procedure § 2948, at 440 (1973)). Thus, a finding of irreparable harm is warranted when the plaintiff can "convincingly" show that there has been a constitutional violation that "carries noncompensable damages." *Donohue v. Paterson,* 715 F.Supp.2d 306, 315 (N.D.N.Y.2010).

The Federal Plaintiffs have alleged a violation of their constitutional rights under the Free Exercise Clause of the First Amendment, thus raising a claim of constitutional deprivation. However, as the Court in *Donohue v. Mangano* noted, "[o]f course, the Court cannot determine whether the constitutional deprivation is convincingly shown without assessing the likelihood of success on the merits." 886 F.Supp.2d at 150 (citing *Turley v. Giuliani,* 86 F.Supp.2d 291, 295 (S.D.N.Y.2000) (holding that the "two prongs of the preliminary injunction threshold merge into one" when the irreparable harm claimed is a violation of a constitutional right)).

Thus, the Court must consider the likelihood that the Federal Plaintiffs will succeed on their claims, or if they have demonstrated sufficiently serious questions regarding the merits of their claims and the balance of hardships tips decidedly in their favor.

## II. *The First Amendment Claim*

■ The First Amendment provides, in relevant part, that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Under the First Amendment, "the general rule [is] that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of the church tribunals as it finds them." *Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich,* 426 U.S. 696, 698, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Watson v. Jones,* 80 U.S. 679, 729, 13 Wall. 679, 20 L.Ed. 666 (1871). The Second Circuit has stated: "The Free Exercise Clause protects a 'church's right to decide matters of governance and internal organization.'" *Rweyemamu v. Cote,* 520 F.3d 198, 208 (2d Cir.2008) (citing *Petruska v. Gannon Univ.,* 462 F.3d 294, 306 (3d Cir.2006)).

In the Supreme Court's most recent decision regarding State involvement in ecclesiastical decisions, the Court rejected the efforts of the Equal Employment Opportunity Commission (EEOC) to bring an action against a church-employer for claims of employment discrimination. *Hosanna–Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.,* —— U.S. ——, 132 S.Ct. 694, 705, 181 L.Ed.2d 650 (2012). The Court held that a state court may not "[r]equire a church to accept or retain an unwanted minister, or punish[ ] a church for failing to do so" because "[s]uch action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Hosanna–Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.,* 132 S.Ct. at 706. The Court explained that "[b]y imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments." *Id.* at 706.

■ Accordingly, civil courts may resolve property disputes and other secular issues that arise with respect to a religious

entity, but only when inquiry "into religious law and polity" is not required. *Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. at 709, 96 S.Ct. 2372. For example, a court may decide issues that involve the types of matters often resolved by civil courts, such as property or contract disputes, provided that no ecclesiastical determinations are required. *See Little v. First Baptist Church, Crestwood*, 475 U.S. 1148, 1149, 106 S.Ct. 1802, 90 L.Ed.2d 347 (1986) (recognizing that "[b]ecause religious organizations may own property and enter into contracts, it is inevitable that they will become involved in legal disputes"). Additionally, a "narrow circumstance in which at least 'marginal civil court review' of a church dispute might be appropriate is if the decision of a proper church tribunal is the product of fraud or collusion;" again, the narrow exception would apply only where no ecclesiastical determinations are necessary. *Burgess v. Rock Creek Baptist Church*, 734 F.Supp. 30, 34 (D.D.C.1990) (citing *Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. at 712, 96 S.Ct. 2372; *Presbyterian Church v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969)).

However, civil courts may not entertain claims that in effect require religious determinations that are ecclesiastical, regardless of the nature of the underlying dispute. *See Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. at 708–10, 96 S.Ct. 2372; *Little v. First Baptist Church, Crestwood*, 475 U.S. at 1149, 106 S.Ct. 1802 (stating that "where the use of property or the terms of a contract necessitate reference to ecclesiastical principles or authority, courts must exercise extreme care to avoid taking sides on matters of religious belief").

Numerous courts have declined to intervene where the issue relates to membership in the religious organization. *See, e.g., Askew v. Trustees of the Gen. Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 776 F.Supp.2d 25, 30–31 (E.D.Pa.2011), *aff'd*, 684 F.3d 413 (3d Cir.2012) (denying stay to an individual who claimed to be part of the church where the church's leader declared the individual a non-member); *Burgess v. Rock Creek Baptist Church*, 734 F.Supp. at 34 (refusing to review "the fairness or correctness of the defendants' decision to terminate the plaintiff's membership"); *Grunwald v. Bornfreund*, 696 F.Supp. 838, 840–41 (E.D.N.Y.1988) (refusing to intervene where the religious community threatened plaintiff's excommunication).

As the Supreme Court noted, "[e]ven when rival church factions seek resolution of a church property dispute in civil courts there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." *Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. 696 at 709, 96 S.Ct. 2372. Put simply, "[a] civil court presiding over church disputes must be particularly careful not to violate the Free Exercise and Establishment Clauses by ruling against one party and for the other party based on the court's resolution of the underlying controversy over religious doctrine and practice." *Burgess v. Rock Creek Baptist Church*, 734 F.Supp. at 31.

Before engaging in a substantive analysis of the Federal Plaintiffs' First Amendment claims—which requires an analysis of Section 1983, the federal law that grants a private right of action for such a claim—the Court must first consider whether the Court should abstain from deciding the

issues presented given the ongoing State Case.

### III. *Abstention* [19]

■ Prior to determining whether the Federal Plaintiffs in this case have a cognizable Section 1983 claim based on the First Amendment, the Court must first consider whether abstention is appropriate so that the federal court does not unduly interfere with the State Court proceedings. *See Hindu Temple Soc'y of N. Am. v. Supreme Court of State of N.Y.*, 335 F.Supp.2d 369, 374 (E.D.N.Y.2004), *aff'd*, 142 Fed.Appx. 492 (2d Cir.2005). There are two theories under which abstention may be appropriate.[20]

#### A. *Anti–Injunction Act*

■ The Anti–Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in the aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "necessary in aid of jurisdiction" exception generally applies to cases involving the disposition of real property where the federal court acquired jurisdiction over the property before the state court acquired jurisdiction. *See Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 641, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *see also Sierra v. City of N.Y.*, 528 F.Supp.2d 465 (S.D.N.Y.2008). Thus, this exception would not apply here.

However, the Supreme Court has held that actions brought pursuant to 42 U.S.C. § 1983 may fall within the "except as expressly authorized by Act of Congress" exception. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Since this case is brought under Section 1983 based on a claim that the Federal Defendants violated the Federal Plaintiffs' constitutional rights under the First Amendment, the Anti–Injunction Act may not require federal court abstention. However, whether this exception to the Anti–Injunction Act is applicable depends upon whether the Federal Plaintiffs have made out a cognizable Section 1983 claim.

Before addressing the substance of the Section 1983 claim, however, the Court must consider whether abstention is required under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

#### B. *Younger Abstention Doctrine*

■ In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court made it clear that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing

---

**19.** The Federal Plaintiffs argue in their Reply Memorandum that the Court should not consider the *Younger* doctrine, nor the Anti–Injunction Act, because the Federal Defendants waived such arguments by not raising them in their papers. (Pls.' Reply at 7). The Court rejects this contention because abstention concerns may be raised *sua sponte*. *See Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *see also Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir. 1987).

**20.** The *Rooker–Feldman* doctrine provides another basis for federal court abstention grounded in the principle that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments...." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir.2005). The Second Circuit has articulated two procedural requirements for *Rooker–Feldman* to apply: "(1) the federal suit must follow the state judgment; and (2) the parties in the state and federal suits must be the same." *Id.* at 89. In this case, *Rooker–Feldman* does not apply because the State Case is ongoing, no final judgment has entered, and more importantly, the parties to the two proceedings are not the same.

state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir.2003). "*Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Id.; see also Schachter v. Whalen*, 581 F.2d 35, 36 n. 1 (2d Cir.1978) (*per curiam*) (holding that "*Younger* abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case"). Thus, under *Younger*, federal courts may not interfere when: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d at 74. "The spirit animating *Younger* is that state courts can be trusted to follow the mandates of the federal constitution." *Hindu Temple Soc'y of N. Am. v. Supreme Court of State of N.Y.*, 335 F.Supp.2d at 374.

■ In the interests of comity, the *Younger* doctrine requires abstention "whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Donohue v. Mangano*, 886 F.Supp.2d at 141. Although the *Younger* doctrine initially only applied to state criminal proceedings, it has since been extended to "civil enforcement proceedings" as well. *See New Orleans Pub. Serv. Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2004). When applying *Younger* to civil proceedings, there is a distinction between "remedial actions," where plaintiff sought relief in federal court because of wrongful con-

duct by the state, and "coercive actions," where plaintiff was compelled to participate in the action. *See Donohue v. Mangano*, 886 F.Supp.2d 126, 144–45 (E.D.N.Y. 2012). " 'The *Younger* line of cases is solely concerned with preventing [d]efendants in state court from circumventing state prosecution or enforcement by way of a federal judicial intervention.' " *Id.* at 146 (citing *OMYA, Inc. v. Vermont*, 80 F.Supp.2d 211, 215 (D.Vt.2000)). As a result, the *Younger* doctrine may be applied to civil enforcement proceedings where the State is a party, *see Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), and to litigation between two private parties where the state court has an interest in enforcing its own judgments. *See Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Although the courts have not uniformly accepted the "coercive" versus "remedial" categorization, the Second Circuit appears to implicitly adopt the dichotomy. *Donohue v. Mangano*, 886 F.Supp.2d at 146–47 (discussing cases).

In order for *Younger* abstention to be appropriate, plaintiffs generally must have an " 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d at 77 (quoting *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). Indeed, abstention is not appropriate where the claims in the state and federal actions are different, and as such, the state court does not offer an adequate review of the federal constitutional claims. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d at 101 (holding that because the "unauthorized actions of the [state] court administrators [ ] form the gravamen of the federal plaintiffs' complaint ... [t]he state case ... [did] not provide a meaningful

opportunity of review of the federal plaintiffs' constitutional claims").

■ Courts are also hesitant to abstain when a party to the federal case has not been named as a party to the state case and has had no opportunity to raise its claims before the state court. (*See id.*) "In applying *Younger* to third-parties, courts should be sensitive to the fact that 'abstention ... is the narrow exception, not the rule,'" *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d at 82 (quoting *Cecos Int'l, Inc. v. Jorling,* 895 F.2d 66, 70 (2d Cir.1990)), and therefore, courts may only abstain "if the interests of the third-parties are sufficiently intertwined with those of the party to the state court action." *Id.* at 82; *see generally Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (refusing to abstain where plaintiff's companion had been arrested, but he had not, and where no state action was pending against plaintiff). *Cf. Hindu Temple Soc'y of N. Am. v. Supreme Court of State of N.Y.,* 335 F.Supp.2d at 374 (holding that the nature of the factual scenario, the fact that the plaintiffs were represented by the same counsel, and the fact that the third party was requesting that the federal court intervene in the state court proceeding— "the [third party] plaintiffs [had] standing to raise the constitutional claims *because of* the state court rulings"—the court was required to abstain from interfering in the state court proceeding).

■ Some circumstances exist, however, where federal court intervention may be warranted even when *Younger* would seem to require abstention. For example, "[a] federal court may ... intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002)

(quoting *Younger v. Harris,* 401 U.S. at 54, 91 S.Ct. 746). However, "[g]enerally, for such a showing to be made, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner,* 18 F.3d 96 (2d Cir.1994).

■ In this case, it is clear that there is an ongoing state court action where the very issue of the Temple elections and the question of membership is being addressed; indeed, there is no question that the State Case was commenced long before the Federal Plaintiffs initiated this action in federal court. *See Donohue v. Mangano,* 886 F.Supp.2d at 142 (holding that "[t]he principles of *Younger* apply in full force so long as the state proceedings are begun 'before any proceedings of substance on the merits have taken place in the federal court'"). Thus, the first factor of the *Younger* test favors abstention.

As to the second factor, there are important state interests implicated by this case. *See Hindu Temple Soc'y of N. Am. v. Supreme Court of State of N.Y.,* 335 F.Supp.2d at 373–74. Not only does the State Court have an interest in enforcing New York laws designed to protect religious corporations, but the State Court has an independent interest in enforcing its own judicial orders and judgments. *See id.* at 373. In *Hindu Temple Society,* this court confronted a similar dispute relating to the control of a Hindu Temple in Queens, where a dispute arose as to the legitimacy of the Board of Trustees. *Id.* at 370. Proceedings were commenced in New York State Supreme Court under the Not–for–Profit Corporations Law and after various appeals, a referee was appointed to set qualifications for membership and establish a Management Committee. *Id.* Suit was filed in federal court by a group of individuals that included some parties to the state action and some who

were not parties, alleging that their First Amendment rights had been violated by the actions of the referee. *Id.* at 371.

In analyzing the Younger abstention doctrine, the court dismissed the plaintiffs' argument that the state had no legitimate interest in proceeding with unconstitutional activity, noting that "*Younger* requires this Court to abstain from deciding such questions while the state proceedings are ongoing." *Id.* at 374. Similarly, in this case, the State Court's interest in enforcing its judgments and in enforcing its laws suggest that the second prong of the abstention doctrine has been satisfied at least while the State Case continues. A "challenge to the state court's effectuation of its judgments is precisely what the plaintiffs should raise on appeal through the state court—not in a parallel, contemporaneous attack in federal court." *Id.*

However, there is one critical distinction between the facts in *Hindu Temple Society* and the instant action. Unlike *Hindu Temple Society,* where the parties in the federal action included some of the same parties to the state action, none of the Federal Plaintiffs in this case are parties to the State Case. (*See* Pls.' Mem. at 24). Thus, the question raised here is whether the Federal Plaintiffs—non-parties to the State Case—lack a means to press their constitutional claims. If so, the third prong of the *Younger* abstention doctrine has not been satisfied. As the Court in *Hartford Courant Co. v. Pellegrino* noted, the extent to which the plaintiffs in a federal action must be identical to the parties in the state proceeding in order for *Younger* to apply is "more complicated and less settled...." 380 F.3d 83, 101 (2d Cir. 2004).

In *Spargo,* the court noted that the Supreme Court has held that in certain circumstances, where the plaintiffs' interests are "so inextricably intertwined" that the federal court's actions would directly interfere with the state court proceedings, then abstention would apply even if the federal plaintiffs were not involved in any pending state action. *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d at 82 (citing *Hicks v. Miranda,* 422 U.S. 332, 348–49, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) and quoting *Green v. City of Tucson,* 255 F.3d 1086, 1100 (9th Cir.2001) (*en banc* )); *see also Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (reiterating that there are circumstances where the plaintiffs are "so closely related" that abstention is appropriate even though the Federal Plaintiffs may not be subject to the state proceeding).

In this case, the Federal Defendants contend that the Federal Plaintiffs' interests are so closely intertwined with the interests of the defendants in the State Case that the Federal Plaintiffs and the State Case defendants should therefore be considered proxies or alter egos of one another such that their interests are aligned and should be left to consideration in the State Case. (Defs.' Mem. at 2; Baker Aff. ¶ 4). At this point in the very infancy of this federal lawsuit, the Court lacks the necessary information to determine whether the interests of the Federal Plaintiffs are in fact so closely intertwined as to make abstention appropriate. However, another reason abstention may not be appropriate is "that the constitutional claims in the state and federal actions are, in actuality, quite different," *Hartford Courant Co. v. Pellegrino,* 380 F.3d at 101, because the alleged violation of the First Amendment does not appear to have pleaded in the state proceeding, although the State Case judge does appear to have discussed First Amendment concerns at least once, during a hearing that occurred

on November 28, 2011. (*See* Pls.' Mem., Ex. Q).

Under the circumstances, although *Younger* abstention may in fact be appropriate, it depends upon the nature of the parties and their respective interests, as well as the nature of the claims that have been raised in the State Case. Additional information is necessary to enable the Court to make a determination as to whether *Younger* abstention applies.

Accordingly, the Court proceeds to consider whether a cognizable Section 1983 claim has been stated by the Federal Plaintiffs, since this will determine both whether the Anti–Injunction Act applies, and whether there is a likelihood of success on the merits, which is required before injunctive relief can be granted.

## IV. *Section 1983*

42 U.S.C. § 1983 provides a federal private right of action for individuals alleging constitutional violations by persons acting "under color of any statute, ordinance, regulation, custom, or usage" of the State. In order to state a valid claim for relief under Section 1983, plaintiffs must satisfy a two-part test by alleging facts that demonstrate: (1) the defendants acted under color of state law and (2) the plaintiffs were thereby deprived of a constitutionally or federally protected right. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986).

In order to satisfy the second prong of this test, the Federal Plaintiffs must prove they were deprived of a constitutionally or federally protected right. *See* 42 U.S.C. § 1983; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986). As noted above, the asserted constitutional depriva-

tion in this case is based upon an alleged violation of the First Amendment. (Pls.' Mem. at 18–19).

With respect to the first prong of the test, the Federal Plaintiffs are "required to show state action." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.2003) (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)), *cert. denied*, 539 U.S. 942, 123 S.Ct. 2610, 156 L.Ed.2d 628 (2003); *see also United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). In addition, there must be an allegation that the Federal Defendants were personally involved in or actually caused a deprivation of plaintiffs' constitutional rights. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

While not clearly stated as such, the "state action" alleged here appears to be the conduct of the State Court and its appointed Receiver in supervising the Temple election and in making membership decisions that will determine who will be permitted to participate in the election. (Pls.' Mem. at 21–22). Specifically, the Complaint alleges that "the state court judge . . . signed an order removing the duly elected Management Committee and Trustees from office . . ." (Compl. ¶ 75), that the State Court judge appointed a receiver, and that the "Receiver asked the judge" to bar the 2009 Management Committee from running in the upcoming election. (*Id.* ¶ 77). The Complaint further alleges that the "state court judge threatened to disqualify the Management Com-

mittee" (*id.* ¶ 78), gave the Receiver "final authority to decide who can be a general/voting member and who can vote in the next election" (*id.* ¶ 79), and "approved 'rules' that the Receiver created, herself, for deciding who would be a general/voting member, without regard to the Temple's own bylaws." (*Id.* ¶ 80).

However, while the Complaint alleges that the Federal Defendants "as well as the [S]tate [C]ourt judge, and Receiver, proceeded to trample on the First Amendment rights of the plaintiffs and those similarly situated" (*id.* ¶ 76), it is unclear from the Federal Plaintiffs' Complaint how the Federal Defendants either qualify as state actors or how they were personally involved in or caused the constitutional deprivation of which the Federal Plaintiffs are complaining, other than to allegedly solicit non-Ravadisia to enroll as members and thus influence the election.

Accordingly, it appears to the Court that the Federal Plaintiffs have not made out a cognizable Section 1983 claim against the Federal Defendants.[21] Therefore, in the absence of a viable Section 1983 claim, the Section 1983 exception to the Anti–Injunction Act would not apply.

### V. *Federal Rules of Civil Procedure*

Independent of the question whether the Court must abstain from interfering in the State Case, there are fundamental procedural problems with the Federal Plaintiffs' request, as well. As the Federal Defendants correctly assert, the injunctive relief sought by the Federal Plaintiffs is both too broad and if granted, would apply to parties not before the Court, in contravention of the Federal Rules of Civil Procedure. (Defs.' Mem. at 1–2; 7–8).

### A. *Rule 65—Injunctive Relief*

#### 1) *Overly Broad*

▆ Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a court entering an injunction must explain why the injunction was issued and precisely what its terms are, and must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed.R.Civ.P. 65(d)(1). "Thus, Rule 65(d) 'is satisfied only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden' or required." *Petrello v. White*, 533 F.3d 110, 114 (2d Cir.2008) (quoting *Fonar Corp. v. Deccaid Servs., Inc.*, 983 F.2d 427, 430 (2d Cir. 1993)). Injunctions that are overly broad are disallowed. *See New York v. Shinnecock Indian Nation*, 560 F.Supp.2d 186, 190–91 (E.D.N.Y.2008) (listing cases).

▆ The Federal Defendants argue that the Federal Plaintiffs' request for preliminary injunction is overly broad. (Defs.' Mem. at 1). Although the Federal Defendants do not mention Rule 65 specifically, it appears to the Court that this is the Rule upon which the Federal Defendants rely.

The relief initially requested by the Federal Plaintiffs in their motion papers is a preliminary injunction seeking to enjoin the Federal "Defendants and any other person, party, or entity, from taking any steps or authorizing any actions that are contrary to the Bylaws" of the Temple. (Pls.' Mem. at 28). Not only is this overbroad in that it seeks to enjoin persons "not specifically described or enumerated" (Defs.' Mem. at 1), but the request to enjoin any "steps" or "actions that are

---

**21.** Unlike the Complaint in *Hindu Temple Society*, which also included claims of conspiracy involving the state actors pursuant to 42 U.S.C. § 1985, here no such claims have been alleged.

contrary to the Bylaws" is vague and sweeps too broadly. (*Id.*) For this Court to grant such a request would require the Court to enjoin the Receiver and the State Court from proceeding in accordance with the State Court's prior rulings. More specifically, implicit in the Federal Plaintiffs' request for relief is an order that not only would enjoin the election from proceeding on November 25 *sine die*, pending resolution of the voter registration issues, but it seeks to have the Court: (1) strip the Receiver of her court-appointed authority to oversee the upcoming election; (2) reinstate the 2009 Management Committee that was removed by the State Court; and (3) authorize the former Management Committee to determine who shall participate in the vote for a new Management Committee. (Compl. ¶ 104).

Accordingly, the Court agrees that the injunctive relief sought is too broad in its requested scope, and that as a result, it violates Rule 65. Put simply, the Federal Plaintiffs' request that the Temple's Bylaws be enforced is, as it appears to the Court, an expansive and amorphous request that violates the Federal Rules of Civil Procedure.

### 2) *Parties to Be Bound*

■ In addition, Rule 65 of the Federal Rules of Civil Procedure requires that an injunction issued by a federal court may only bind: (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert or participation with any of the aforementioned. Fed.R.Civ.P. 65(d)(2). "Ordinarily, 'a court's in personam order can bind only persons who have placed themselves or been brought within the court's power.'" *Doctor's Assocs. v. Qasim*, 225 F.3d 645, at *3 (2d Cir.2000) (citing *Doctor's Assocs. v. Reinert & Duree*, 191 F.3d 297, 302 (2d Cir.1999)). As the Second Circuit has stated, "in exercis-

ing its equitable powers, a court 'cannot lawfully enjoin the world at large.'" *People of State of N.Y. v. Operation Rescue Nat.*, 80 F.3d 64, 70 (2d Cir.1996) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930)), *cert. denied, Broderick v. United States*, 519 U.S. 825, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996).

■ Outside the context of injunctive relief, Rule 19 of the Federal Rules of Civil Procedure states that an action may not be allowed to proceed if necessary parties are not before the Court. "A necessary party is one that 'should be joined if feasible.'" *Swain v. American Auto Accessories, Inc.*, No. 96 CV 7908, 1997 WL 137442, at *2 (S.D.N.Y. March 25, 1997) (quoting *Associated Dry Goods v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990)). According to Rule 19(a)(1), a party is necessary to a litigation if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1); *see also Viacom Intern., Inc. v. Kearney*, 212 F.3d 721 (2d Cir.2000), *cert. denied, Taylor Forge Stainless, Inc. v. Viacom Int'l*, 531 U.S. 1051, 121 S.Ct. 655, 148 L.Ed.2d 558 (2000).

■ Under Rule 19 of the Rules of Federal Procedure, "if some current party could not ... obtain relief from its opponent without the participation of the absent party, Rule 19(a)(1)(A) requires join-

der of that absent party." *Aguinaga v. UBS AG,* No. 09 CV 3261, 2010 WL 5093433, at *9 (S.D.N.Y. Dec. 14, 2010) (citing *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n,* 471 F.3d 377, 385 (2d Cir. 2006)).

 The Federal Defendants assert that the injunction seeks to bind parties who have not been named in this action— namely, the State Court and the Receiver—and that because the State Court and the Receiver are therefore necessary parties to this action, the requested relief should be denied.[22] (*See* Defs.' Mem. at 7).[23]

As noted, the conduct alleged in the Complaint for which the Federal Plaintiffs seek relief seems to be solely the responsibility of the State Court and the Receiver it appointed. Indeed, the Receiver is currently both in charge of the operations of the Temple and is managing the upcoming election, and it is the Receiver and the State Court that are engaging in the allegedly unconstitutional conduct. As such, the Court is unable to see how it can afford the requested relief without the State Court and/or the Receiver being named as defendants in this case.

Nonetheless, the Federal Plaintiffs argue that this Court may enjoin the State Court even though the State Court is not a party. (Pls.' Reply at 8). Indeed, the Federal Plaintiffs assert that imposing an injunction on a non-party would be "routine." (*Id.*) However, in support of that assertion, the Federal Plaintiffs cite only two cases, neither of which is persuasive.

In the first case cited by the Federal Plaintiffs, *Diabo v. Delisle,* 500 F.Supp.2d 159, 168–69 (N.D.N.Y.2007), the federal court was asked to enjoin the state Family Court and a court-appointed referee from determining custody of a child who had been the subject of a prior federal court action brought pursuant to the International Child Abduction Remedies Act, 42 U.S.C. § 11601–11. The federal court granted the requested injunction, enjoining further action by the Family Court, explaining that the injunction was granted in aid of the federal court's jurisdiction and to protect and effectuate its prior orders. *Diabo v. Delisle,* 500 F.Supp.2d at 169–70 (holding that "[c]onsequently, that action constituted an attempt to relitigate an issue already determined in [ ][f]ederal [c]ourt").

In arguing that the case supports their position that there is no need to join the

---

22. The Federal Defendants also complain that plaintiffs failed to bring an Article 78 proceeding against the State Court judge. (*Id.* at 7).

23. The 1996 Amendments to Section 1983 preclude injunctive relief against judicial officers. "In any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104–317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983). Indeed, "it is well settled that judges are absolutely immune [from both injunctions and damages] for any actions taken within the scope of their judicial responsibilities." *Hubbard v. J.C. Penny Dep't Store,*

No. 05 CV 6042, 2005 WL 1490304, at *2 (W.D.N.Y. June 14, 2005) (citing *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). This doctrine extends to other officials "who are delegated judicial or quasi-judicial functions," *see Mosher–Simons v. County of Allegany,* 99 N.Y.2d 214, 220, 753 N.Y.S.2d 444, 783 N.E.2d 509 (N.Y.2002), including court-appointed receivers, who act as an arm of the court. *In re Liquidation of the U.S. Capital Ins. Co.,* 36 Misc.3d 635, 948 N.Y.S.2d 549 (N.Y.Sup.Ct.2012). Thus, even if the Federal Plaintiffs were to attempt to join the State Court or the Receiver, they would be "absolutely immune" and thus Section 1983 does not provide a procedure for redress.

Receiver or the State Court here, the Federal Plaintiffs rely on dicta in the opinion in which the *Diabo* court stated that a nonparty "could properly be enjoined from pursuing a state court custody proceeding." *Id.* at 168–69. However, in *Diabo*, the non-parties—the child's father and the state family court referee—had previously been "deem[ed] ... a necessary party" and had been joined and given a full and fair opportunity to present their arguments to the federal court. *Id.* at 168. Here, neither the Receiver nor the State Court has had an opportunity to litigate the questions raised or defend against the claims of allegedly unconstitutional conduct because neither party is named as a defendant in this case and neither is present before this Court.

Similarly, the second case referenced by the Federal Plaintiffs, *In re WorldCom, Inc. Securities Litigation*, is distinguishable on a number of grounds. 315 F.Supp.2d 527 (S.D.N.Y.2004), *reversed on other grounds, Retirement Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir.2004). First, the "application for extraordinary relief" before the court in *WorldCom* was brought pursuant to the All Writs Act, 28 U.S.C. § 1651, seeking to restrain a related state court action from proceeding to trial prior to the trial in the multi-district litigation (MDL) pending in federal court. "The All Writs Act provides federal courts with the power to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' " *In re WorldCom, Inc. Sec. Litig.*, 315

F.Supp.2d at 541 (quoting 28 U.S.C. 1651). Unlike here, the federal action had been commenced prior to the state court proceeding and as the court in *WorldCom* noted, there is a distinction between "ordinary litigation" and the complex securities litigation that was the subject matter of the *WorldCom* case. *Id.* In holding that the Anti–Injunction Act did not require abstention, the court noted that MDL cases are treated by the Second and Fifth Circuits as "the equivalent of *in rem* actions," and thus in the context of the All Writs Act, the federal court has unique authority to enjoin a state court litigation when the action is *in rem. Id.* at 542, 549–50. Moreover, the All–Writs Act gives the federal court acting under such authority "the power to issue writs affecting third parties." [24] *Id.* at 549. As such, the *WorldCom* case is distinguishable from the current case, where there is no *in rem* action, and no All Writs Act authority that would allow the federal court to issue the requested injunctive relief without either the Receiver or the State Court being named as parties.

Accordingly, the Court finds that the State Court and the Receiver are necessary parties to the action and must be before this Court in order to effectuate the requested injunction.

## CONCLUSION

In summary, the Court finds that the Federal Plaintiffs have not only failed to demonstrate the likelihood of success on the merits, but that the injunctive relief as requested is overly vague and that the

---

**24.** The court in *WorldCom* quotes the Supreme Court, which explained a federal court's power under the All Writs Act: "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *In re WorldCom; Inc. Sec. Litig.*, 315 F.Supp.2d at 549–50 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977)).

parties necessary to effectuate that order are not before the Court. Accordingly, the Court denies the Federal Plaintiffs' request for a preliminary injunction.

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**